WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ventures Edge Legal PLLC,<br><br>           Plaintiff,<br><br>v.<br><br>GoDaddy.com LLC,<br><br>           Defendant. | No. CV-15-02291-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion to Certify Class of Plaintiff Ventures Edge Legal PLLC (Doc. 86).[1] For the following reasons, the motion is denied.

## BACKGROUND

Microsoft sells an office-services product known as Office 365. This product is a software system that provides its buyers with various computer programs and functionalities. Consumers may purchase Office 365 directly from Microsoft, but Microsoft also authorizes other retailers to sell the product. In 2014, Microsoft and GoDaddy entered into a partnership that allowed GoDaddy to sell Office 365. GoDaddy's version of Office 365 aimed to serve the small business market. In its version of Office 365, GoDaddy "consolidated setup, billing and support processes" to result in a

---

[1] Plaintiff seeks to seal Exhibit 15 to their Reply in Support of Plaintiff's Motion for Class Certification (Doc. 116). The Court entered a Stipulated Protective Order (Doc. 56) as discovery was likely to produce information and documents that are normally kept confidential for competitive reasons. Defendant has stipulated to seal Exhibit 15. Because both parties are in agreement and the Court finds that the contents of Exhibit 15 fall within the ambit of the Stipulated Protective Order, the motion is granted.

simplified user interface specifically intended for small business customers. This simplified user interface offers a different configuration of Office 365 than that offered by Microsoft. Despite bearing the same name, Plaintiff alleges that Microsoft and GoDaddy's Office 365 Business Premium plans contain different functionalities. Some of the Microsoft functionalities are absent in GoDaddy's plan, and some functionalities are added to GoDaddy's plan that do not exist in the Microsoft version. For example, a GoDaddy purchaser of Business Premium received Microsoft Access—a Microsoft product not available for Microsoft Business Premium purchasers. On the other hand, a GoDaddy purchaser of Business Premium lacks access to Microsoft Sharepoint, Single Sign-In, among other capabilities—Microsoft functionalities that are available to Microsoft Business Premium purchasers.

GoDaddy markets and sells its version of Office 365 Business Premium to prospective customers in different ways. GoDaddy's marketing strategy focused on the accessibility of the Office 365 products and their use for small business owners. GoDaddy consumers can buy Office 365 products from the Office 365 landing page of GoDaddy's website, from the consumer's personal account, or by contacting GoDaddy customer support. GoDaddy supports an online chat function where customers can ask questions about products to company representatives. Customers can also make purchases of products through the assistance of the company representatives in the chat. GoDaddy's chat employees are trained on the functionalities of the product, and GoDaddy asserts that the functionalities of GoDaddy's Office 365 Business Premium including the differences in functionalities might be disclosed to customers during the chat. There is evidence that GoDaddy representatives do in fact disclose the different functionalities when asked. In Plaintiff's own conversations with GoDaddy representatives through the chat feature, GoDaddy representatives told Plaintiff that there were differences between the Microsoft and GoDaddy product and discussed which functionalities were not supported by GoDaddy. (Doc. 103). In Plaintiff's case, however, these conversations did not occur until after Plaintiff had already purchased GoDaddy's

product. Customers, however, may use the chat function prior to purchasing the product through the website or otherwise.

Plaintiff argues that GoDaddy's alleged failure to disclose these different functionalities on its website is an omission of a material fact, and therefore a violation of the Arizona Consumer Fraud Act (ACFA). Plaintiff seeks to certify a class of "[a]ll individuals and entities who purchased the Office 365 Business Premium plan through GoDaddy's website since November 13, 2014." (Doc. 86, pg. 2).

## DISCUSSION

### I. Rule 23 Requirements

A class may not be certified unless it meets each of the four requirements of Rule 23(a), typically referred to as numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). In addition, a class action must satisfy at least one of the three requirements of Rule 23(b), one of which is "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The party seeking certification bears the burden of demonstrating that it has met all of these requirements, and "the trial court must conduct a 'rigorous analysis'" to determine whether it had met that burden. *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233) (9th Cir. 1996)).

### II. Analysis

#### A. Motion to Strike

In Plaintiff's Reply in Support of Plaintiff's Motion for Class Certification (Doc. 116), Plaintiff attaches three exhibits consisting of expert reports. Exhibit 3 of Dwight Duncan calculates damages. Exhibit 8 of Ilan Srendi sets forth the different functionalities of Microsoft and GoDaddy's Office 365 Business Premium products. Exhibit 13 of Thomas Maronick discusses the monetary value consumers place on the Microsoft functionalities that are not present in the GoDaddy product. Plaintiff's Motion

for Class Certification (Doc. 86) contained declarations of all three experts, each asserting their qualifications and the work they sought to produce in their expert reports. Defendants move to strike the expert reports attached to Doc. 116 as consisting of new arguments and evidence, or for leave to file a surreply. In light of the Court's denial of the Motion to Certify Class, the Motion to Strike is moot.

**B. Individual Questions Predominate, Preventing Certification Under Rule 23(b)(3)**

Plaintiffs have not shown predominance—that questions common to the class predominate over individual questions. Therefore, the Court declines to certify the Class.

**1. The Arizona Consumer Fraud Act**

The predominance inquiry necessarily requires an evaluation of the underlying cause of action. ACFA states that the "act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with the intent that others rely on such concealment, suppression of omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

ACFA itself only provides for enforcement by the Arizona Attorney General, but the Arizona Supreme Court held that the statute also creates an implied private right of action. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1122 (Ariz. 1974). ("Without effective private remedies the widespread economic losses that result from deceptive trade practices remain uncompensable and a private remedy is highly desirable in order to control fraud in the marketplace."). A plaintiff must show that "(1) the defendant made a misrepresentation in violation of the Act, and (2) defendant's conduct proximately caused plaintiff to suffer damages." *Cheatham v. ADT Corp.*, 161 F.Supp.3d 815, 825 (D. Ariz. 2016) (citing *Parks v. Macro-Dynamics, Inc.*, 591 P.2d 1005, 1008 (Ariz. Ct. App. 1979)).

### 2. Reliance is an Element of an ACFA Claim

Whether a party seeking class certification must prove individual reliance is a question of state law. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1092 (9th Cir. 2010) (noting that the proper inquiry is "whether the law of [the state] requires a finding of individual reliance in the application of its consumer protection statutes"). ACFA states that an "omission of any material fact . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A). Plaintiff asserts that this statutory language demonstrates that individualized reliance inquiries are not required to bring a private right of action under ACFA. But, such an argument has been long and consistently rejected by Arizona courts. *See, e.g., Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978) ("It is clear that before a private party may exert a claim under the statute, he must have been damaged by the prohibited practice. A prerequisite to such damages is reliance on the unlawful acts."); *Parks*, 591 P.2d at 1008 ("For false advertisement to cause the injury, the hearer must actually rely on the advertisement; unlike common law fraud, this reliance need not be reasonable."); *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004) (noting that "reliance is a required element under Arizona's consumer fraud statute" but it need not be reasonable). The Arizona Supreme Court has never taken up this precise question, but it has left the Court of Appeals' requirement for individual reliance under a private right of action undisturbed for forty years. It was not improper for the Arizona courts in finding a private right of action in the statute to require as a condition of such an action that a Plaintiff rely on the misleading advertisement to her or his detriment before obtaining an individual recovery.

### 3. A Presumption of Reliance is Inappropriate

To the extent that reliance is an element, it cannot be presumed on a class-wide basis—at least based on the facts of this case. Even assuming that there might be an omissions case in which it was appropriate to adopt a presumption of reliance, this is not such a case. This case does not involve a single product with set functionalities in which

GoDaddy has marketed the product absent some of those functionalities without disclosing as much. It involves separate versions of a product with the same name that has been customized for different users and contains somewhat different functionalities. Plaintiff presumably purchased GoDaddy's Office 365 Business Premium because of his prior experience with Microsoft's Office 365 Business Premium.[2] In essence, Plaintiff thought that when he purchased GoDaddy's product he was purchasing the same Microsoft product he had used in the past. However, other purchasers may not have made the choice to buy GoDaddy's product with the same knowledge. Some purchasers may have bought the GoDaddy Business Premium precisely because it offers a simplified user interface and/or Microsoft Access. Other purchasers may have had no knowledge of the differences between GoDaddy and Microsoft; rather, they saw GoDaddy's advertisements and product and were motivated to purchase it on that information for the price set by GoDaddy.

Presumably, in an attempt to alleviate this difficulty, Plaintiff proposes two methods of calculating damages. In the "consideration paid" model, Plaintiff proposes that that class members would recover all money paid to GoDaddy. In the "discount" model, Plaintiff proposes that class members would recover the consideration paid minus the actual value of the allegedly inferior product. Plaintiff retained an expert to calculate the value of the allegedly inferior GoDaddy Office 365 Business Premium. Both of Plaintiff's models, however, are not sufficient to avoid individualized inquiries.

A class member presumably could not qualify to be included in the "consideration paid" model, unless he or she could establish that in purchasing GoDaddy's version of Office 365, she or he relied on the assumption that it included the missing functionalities

---

[2] Plaintiff states that he believed he was purchasing "Microsoft Office's Business Premium product—Office 365 Business Premium." (Doc. 104-1, pg. 105). At the time of purchasing, Plaintiff "knew what Microsoft Office Business did, and [ ] knew that Microsoft Office Business Premium was a superset of Microsoft Business." (*Id*. at pg. 109). Plaintiff had done trial runs with Microsoft Business Premium before purchasing the GoDaddy version of Business Premium. (*Id*. at pg. 111). Plaintiff did not research the GoDaddy product because he "thought they [GoDaddy and Microsoft] were the same product." (*Id*. at pg. 114).

of Microsoft's version of Office 365. This would involve an individualized inquiry that would predominate.

Nor does Plaintiff's proposed "discount model" work to create a class-wide question. Plaintiffs' discount model aligns with the presumptions of reliance utilized by courts in many securities law cases. In *Affiliated Ute Citizens v. United States*, the Supreme Court created a presumption of reliance when there were omissions connected the sale of securities. 406 U.S. 128, 153–54 (1972). Later, the Court allowed for the fraud-on-the-market presumption of reliance,[3] available in both omissions and affirmative misrepresentations related to the sale of securities. *Basic Inc. v. Levinson*, 485 U.S. 224, 241–49 (1988). *See also Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) ("Thus, the presumption of reliance is available only when a plaintiff alleges that a defendant made material representations omissions *concerning a security that is actively traded in an 'efficient market.'*") (emphasis added). Of course, however, in such cases the Courts are dealing with the same security about which omissions were made. Here, however, as is detailed above, we do not have the same product; we have two different versions of a product bearing the same name.[4] The set of functionalities belonging to one identically named product may or may not have been more valuable than the other, but unlike the

---

[3] This presumption "is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatement." *Basic Inc. v. Levinson*, 485 U.S. 224, 241–42 (1988) (citations omitted).

[4] Additionally, the securities context is a unique one in which legislation has been passed with a "fundamental purpose . . . to substitute a philosophy of full disclosure for the philosophy of caveat emptor." *Affiliated Ute*, 406 U.S. at 151 (quoting *S.E.C. v. Capital Gains Research Bureau*, 375 U.S. 480, 186 (1963)). *See also Stratton v. American Medical Security, Inc.*, 266 F.R.D. 340, 349 ("Courts rarely presume reliance outside of the securities fraud context."). Plaintiffs cite to no Arizona cases suggesting that such an approach has been extended to cases involving the purchase of consumer goods. An Arizona court did recognize a fraud-on-the-market presumption under ACFA in *Persky v. Turley*, Nos. CV 88-1830-PHX-SMM, CV 88-2089-PHX-SMM (D. Ariz., filed Dec. 19, 1991). But *Persky* is distinguishable: it was related to stock purchases, where the fraud-on-the-market presumption of reliance is common.

market-value presumption available in stock purchases, one cannot assume that the failure to disclose the difference in functionalities would affect the price at which one of the two differing products with the same name was sold. Different information about the two different products was already in the market. The presumptions of reliance available in the securities context are not suited to such facts as are present in this case.

Further, as structured, Plaintiff's discount model only attempts to measure the loss in value to GoDaddy's product absent the functionality contained in the Microsoft product even if the consumer purchased the product for that separate functionality or was not aware of the difference. But, even assuming that the functionalities missing from GoDaddy's product cause a decrease in the product's value, the model makes no attempt to calculate the additions in value that may result to class members by GoDaddy's simplified design functions or separate functionalities. Such a value could equal the lost value from the missing functionalities, resulting in no damage to consumers. Or, their value could lessen the delta between GoDaddy's price and the alleged true value of the product. Plaintiff's proposed models, therefore, fail to account for all the variations between the GoDaddy and Microsoft products. This is a particular problem given that there are some consumers who may have sought out GoDaddy's product because of its simplicity and its inclusion of Microsoft Access. Determining who these consumers are and how their damages vary from other consumers would require individualized assessments.

To the extent that Plaintiffs have attempted to account for this by certifying a class of only those persons who have purchased from GoDaddy's website (which appears to be an attempt to eliminate most purchasers who may have been given individual disclosures of the different functionalities), that limitation does nothing to identify whether the putative class member relied on the presence of the "Microsoft" functionality in question, nor does it evaluate the value to the purchaser of the separate GoDaddy functionalities.

State courts have already extended the scope of the ACFA in recognizing a private right of action thereunder. In doing so, they have uniformly required a demonstration of

actual reliance. This Court will not eliminate that state law requirement so as to facilitate class treatment of an omissions claim in this context. The facts of this case do not allow for effective class treatment due to the predominance of individualized inquiries.

### C. Plaintiff's Grievances Are Not Common or Typical to the Class

Rule 23(a)'s typicality requirement tests "whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). As discussed above, Plaintiff appears to have purchased GoDaddy's Office 365 Business Premium because of his prior experience with Microsoft's Office 365 Business Premium. Other purchasers may not have made the choice to buy GoDaddy's product with the same knowledge. Plaintiff's grievance with GoDaddy's package is not necessarily typical of the grievances of absent class members. Other class members may not have suffered the same injury as Plaintiff, and determining which class member did suffer a similar injury would require individualized determinations.

Further, plaintiffs seeking to certify a class must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). However, because "any competently crafted class complaint literally raises common questions," it is not sufficient for a plaintiff to simply identify any question that pertains to the whole class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (citations omitted). Instead, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Id.* at 349–50 (citations omitted). Claims must "depend on a common contention . . . that is capable of classwide resolution." *Id.* at 350. More than presenting a common question, it is necessary to show that a "classwide proceeding [can] generate common *answers* apt to drive the resolution of the litigation." *Id.* (citations omitted). In this case, Plaintiff asserts two common questions: (1) whether GoDaddy's Office 365 Business Premium fails to provide certain functionalities present in the Microsoft

product; and (2) whether GoDaddy fails to disclose the lack of functionality. Answering these questions, however, does not drive resolution of the litigation. As discussed above, ACFA requires consumers to show reliance and injury. Plaintiff has identified questions common to the class. But given the underlying statute and cause of action, these questions are insufficient to resolve the question of whether GoDaddy violated ACFA.

## CONCLUSION

Individual questions predominate in this putative class action. In Arizona, reliance is an element of an ACFA claim. A private litigant bringing an ACFA claim is not entitled to a presumption of reliance based on these facts. Therefore, questions of whether a particular class member relied on the omission are individualized questions that would predominate. Plaintiff's motion to certify a class is denied.

**IT IS THEREFORE ORDERED** that the Motion to Certify Class of Plaintiff Ventures Edge Legal, PLLC (Doc. 86) is denied**.**

**IT IS FURTHER ORDERED** that the Motion to Seal of Plaintiff Ventures Edge Legal, PLLC (Doc. 117) is granted. The Clerk of Court is directed to file the lodged Exhibit (Doc. 118) under seal.

**IT IS FURTHER ORDERED** finding the Motion to Strike of Defendant GoDaddy.com, LLC (Doc. 123) moot.

**Dated this 30th day of January, 2018.**

_____
Honorable G. Murray Snow
United States District Judge